***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Plaintiff has not shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission and that the Commission has jurisdiction of the parties and of the subject matter.
2. It is stipulated that all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties. *Page 2 
3. In addition to the other stipulations contained herein, the parties stipulate and agree with respect to the following undisputed facts:
 a. An employee-employer relationship existed between the Plaintiff and Defendant-Employer.
 b. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
 c. Insurance coverage was provided by Travelers Property Casualty Company of America.
 d. The Plaintiff sustained a compensable injury to his lower back on or about July 10, 2009, which the Defendants accepted.
 e. The Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee on October 7, 2009.
 f. The Plaintiff's compensation rate is $253.46 based on an average weekly wage of $380.00.
 g. That Plaintiff filed a Form 33 Request That Claim be Assigned for Hearing, dated October 28, 2009.
 h. The Defendants filed a Form 33R Response to Request that Claim be Assigned for Hearing, dated December 16, 2009.
 i. That Plaintiff filed a Motion for Independent Medical Examination, dated January 14, 2010.
 j. That Defendants filed a Response to Plaintiff's Motion for Independent Medical Examination, dated January 26, 2010. *Page 3 
 k. An Administrative Order was entered February 12, 2010, by Special Deputy Commissioner Emily M. Baucom denying Plaintiff's Motion for Independent Medical Examination.
 l. That Plaintiff filed an Objection, Exception and Notice of Appeal, dated February 16, 2010, with the Office of the Executive Secretary.
 m. On February 25, 2010, the Plaintiff submitted medical evidence and the Defendants submitted additional medical records to Deputy Commissioner Chrystal Redding Stanback.
 n. An Order entered by Deputy Commissioner Chrystal Redding Stanback on February 22, 2010, ordered the parties to be available for telephone conference on February 26, 2010.
 o. A Post Conference Order entered by Deputy Commissioner Chrystal Redding Stanback on February 26, 2010, granted the parties an extension to submit additional evidence and/or contentions.
 p. The Defendants filed Contentions on March 17, 2010.
 q. An Order entered by Deputy Commissioner Chrystal Redding Stanback on March 25, 2010 denied Plaintiff's Motion for Independent Medical Evaluation.
 r. The Plaintiff filed an Objection, Exception and Notice of Appeal, dated April 1, 2010, with the Office of the Executive Secretary.
 s. A mediated settlement conference was held on April 23, 2010.
 t. The Plaintiff filed a Supplemental Form 33, dated April 28, 2010.
 u. The Defendant filed a Form 33R on June 3, 2010. *Page 4 
 v. All medical records can be stipulated into evidence subject to the rights of either party to depose the treating physicians.
 w. The Plaintiff continued to be employed at Gardner Glass Products, Inc. through May 31, 2010.
 ***********
The following exhibits were received and admitted into evidence at the hearing before the Deputy Commissioner:
 STIPULATED EXHIBITS
1. Stipulated Exhibit No. 1 — Plaintiff's Medical Records
2. Stipulated Exhibit No. 2 — Industrial Commission Forms
 *********** EVIDENTIARY ISSUES
Following the Notice of Appeal to the Full Commission filed by Plaintiff, on May 5, 2011, Defendants filed a Motion to Compel Compliance with Medical Treatment with Request for Attorney Fees. The Full Commission hereby DENIES the Motion.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 49 year old male. Plaintiff injured his lower back on July 10, 2009, while working for Employer-Defendant. Plaintiff was employed as a Standup Edger at the time of his injury. The standup edger is a type of machine that bevels all four sides of a mirror. Plaintiff's position as a Standup Edger required him to work with mirrors that were manufactured by Defendant-Employer.
2. Plaintiff alleged he injured his lower back, neck and right knee on July 10, 2009. However, Plaintiff only reported he injured his lower back to his assistant supervisor Cory *Page 5 
Nichols on the Monday after his injury. An "Employee Statement" for Plaintiff's workers' compensation injury was signed by Plaintiff and Mr. Nichols on July 13, 2009 at 7:00 a.m. and contains no mention of an injury to Plaintiff's right knee or neck in the description of the injury.
3. Plaintiff reviewed and testified regarding the "Employee Statement" that there was no mention of an injury to Plaintiff's right knee or neck in the description of the injury on the "Employee Statement."
4. On July 13, 2009, Plaintiff presented to Dr. John L. Bond, Jr., of Wilkes Surgical Associates, complaining of pain in the lower lumbar area since lifting at work on July 10, 2009. Dr. Bond treated Plaintiff for his back condition through August 18, 2009. The medical records reflect that Dr. Bond prescribed medication, recommended physical therapy, performed x-rays, and obtained an MRI of Plaintiff's lumbar spine. Dr. Bond's diagnosis on August 17, 2009, was chronic back pain, and at the return appointment the next day, Dr. Bond diagnosed Plaintiff with a bulging disc and a small protrusion at L5-S1. The medical records show that Dr. Bond referred Plaintiff to a neurosurgeon.
5. Dr. Bond testified at his deposition that Plaintiff never complained of a right knee injury or neck injury while under his care. Furthermore, Dr. Bond stated that had Plaintiff complained of such injuries, they would have been documented in his medical records.
6. On August 27, 2009, Plaintiff presented to Dr. Matthew Hannibal of Carolina Orthopedic Specialists. The medical record reflects that Plaintiff "presents today with complaint of bilateral back pain into the buttocks bilaterally. It does not extend past the upper thigh." Dr. Hannibal reviewed the MRI scan and diagnosed Plaintiff with a degenerative disc at L5-S1 and acute low back pain. Dr. Hannibal indicated that Plaintiff "appears to have an aggravation of an underlying condition in the form of degenerative disc" that had become a low back strain with *Page 6 
aggravation of possible spondylosis. Dr. Hannibal recommended a conservative course of treatment consisting of stretching, a Medrol Dosepak, followed by anti-inflammatory medications and intensive physical therapy. Dr. Hannibal concluded Plaintiff was unable to perform light duty work and wrote him out of work for six weeks.
7. On September 4, 2009, Plaintiff presented to Dr. Stephen Groves of The Clingman Medical Center, an affiliate of Hugh Chatham Memorial Hospital. The medical record reflects that Plaintiff was seen for an "evaluation of pain involving his right knee he states that the pain began years ago." Dr. Groves provided Plaintiff with the following instructions upon release: no work or strenuous activities until further evaluation.
8. On September 5, 2009, Plaintiff underwent an MRI of his right knee. The Radiology Report for the right knee MRI indicates that Plaintiff has "anterior right knee pain following an injury 7 years ago. Worsening." The impression set forth in the MRI report indicates a horizontal pattern tear in the posterior horn of the medial meniscus as well as chondral thinning in the medial and lateral compartments.
9. On September 15, 2009, Plaintiff presented to Dr. Craig R. Bennett of Northwest Orthopedic Associates, for evaluation of his right knee. Plaintiff reported acute symptoms for two weeks, but noted his problem had actually been going on since the summer. Dr. Bennett reviewed the MRI report and x-rays of Plaintiff's right knee and diagnosed Plaintiff with a torn medial meniscus of the right knee. Dr. Bennett recommended that Plaintiff undergo arthroscopic partial meniscectomy, which was scheduled and later cancelled by Plaintiff.
10. On September 22, 2009, Plaintiff returned to Dr. Hannibal for treatment of his back. Dr. Hannibal reported that Plaintiff "has a non Worker's Comp. injury with regards to his right knee. He has a meniscal tear and this has nothing to do with his low back." Dr. Hannibal *Page 7 
injected Plaintiff's right sacroiliac joint with DepoMedrol and Lidocaine, and directed Plaintiff to follow up with him one month after his knee surgery. Dr. Hannibal continued Plaintiff's out-of-work status and directed Plaintiff to continue physical therapy for his low back. Plaintiff was provided a "Patient Work Status Report" indicating that he was to remain out of work until October 8, 2009.
11. On October 7, 2009, a Form 18 was filed with the North Carolina Industrial Commission by Plaintiff. The Form 18 identifies the body party involved as "lower back." An attached "Exhibit A" references a knee, without specifying a left or right knee, but proceeds to indicate that Plaintiff "had strained his back so severely" and "he feels stiff, has backs aches and throbbing in the lower back area at the base of the spine."
12. On October 8, 2009, Plaintiff was seen by Dr. Hannibal. The medical record reflects that Plaintiff "has injuries to bilateral knees, which are non Worker's Comp related." Dr. Hannibal noted that Plaintiff had been undergoing physical therapy routinely since his back injury in July of 2009, and had been using Voltaren and Darvocet for nearly three months, but had not responded well to either treatment. Dr. Hannibal noted that Plaintiff was still out of work and "does not feel he can return." Dr. Hannibal concluded that Plaintiff had failed three months of physical therapy and medication and therefore, recommended that Plaintiff undergo a series of lumbar epidural injections. Dr. Hannibal continued Plaintiff's out-of-work status.
13. On October 19, 2009, Plaintiff presented to Dr. Christopher Ray Martin, also of Carolina Orthopedic Specialists, for evaluation and treatment of low back pain. Plaintiff reported that on July 10, 2009, "he was trying to lift some mirrors that had gotten stuck together at his job when he felt a lot of pain begin in his back." Dr. Martin diagnosed Plaintiff with *Page 8 
discogenic pain at L5-S1 and performed bilateral L5 transforaminal injections. Dr. Martin prescribed Hydrocodone.
14. On November 19, 2009, Plaintiff presented to Dr. Martin for follow up and reported he discontinued Hydrocodone and was taking Advil instead. Dr. Martin administered a bilateral L5 transforaminal injection and prescribed Relafen.
15. On November 24, 2009, Plaintiff returned to Dr. Hannibal complaining of persistent back pain. Dr. Hannibal reported Plaintiff had received a total of three prior epidural injections that did not seem to have much effect. The medical record reflects that Plaintiff had not worked for approximately five months and was still unable to do so. Plaintiff reported to Dr. Hannibal that he had completed physical therapy, but found his home exercise program too difficult. Dr. Hannibal diagnosed Plaintiff with chronic low back pain and L5-S1 degenerative disk. Plaintiff was prescribed Amrix and referred back to Dr. Martin for a trial of medial branch blocks at L5-S1. Dr. Hannibal continued Plaintiff's out-of-work status.
16. Plaintiff continued to be treated by Carolina Orthopaedic Specialists for persistent back pain. On January 25, 2010, Dr. Martin performed a diskogram at L3-4, L4-5, and L5-S1 to evaluate for diskogenic pain.
17. On February 1, 2010, Dr. Hannibal reviewed the discogram and CT scan. Dr. Hannibal noted severe concordant pain at L5-S1. The medical record reflects that "the pain is still isolated to the lower portion of the lumbar spine." Dr. Hannibal concluded Plaintiff had exhausted conservative management and was unable to return to work. Plaintiff was diagnosed with L5-S1 degenerative disk with axial low back pain without radiculopathy. Dr. Hannibal discussed surgery with Plaintiff expressing hope that it would make Plaintiff at least partially better with regard to symptomatology while noting there was a reasonable chance that Plaintiff *Page 9 
would get no benefit from surgery. Plaintiff indicated he was unable to work in his current condition and expressed an interest in proceeding with surgical intervention. Dr. Hannibal requested authorization for an "anterior lumbar decompression fusion with rods, screws, and/or cages."
18. Dr. Hannibal testified in his deposition that Plaintiff has not returned to him for treatment since the recommendation for surgery on February 1, 2010.
19. Dr. Hannibal further testified at his deposition that he had no documentation of Plaintiff reporting lower leg or knee pain at his initial visit on August 27, 2009. Dr. Hannibal testified that he was aware Plaintiff had a right and left knee injury, but that it was his impression that the injury was not related to workers' compensation. Specifically, when asked during his deposition if Plaintiff's right or left knee injury was related to the workers' compensation injury, Dr. Hannibal responded, "I had no knowledge of the relation the (sic) workers' comp injury."
20. Dr. Martin testified at his deposition that he did not recall Plaintiff complaining of right knee pain, but stated that had Plaintiff complained of right knee pain he probably would have noted it in his office visit records. Upon review of the intake sheet completed by Plaintiff, Dr. Martin testified that Plaintiff did not indicate on the sheet that he had any knee or neck problems and only indicated problems with his low back.
21. Prior to Dr. Hannibal recommending surgery, Plaintiff requested an Independent Medical Examination (IME) with Dr. Gary Poehling of North Carolina Baptist Hospital. The November 20, 2009 letter requesting the IME alleges that none of Plaintiff's physicians had addressed his back injury. However, Plaintiff's medical records document that at the same time he was complaining that his back injury was not being addressed, Plaintiff was in fact *Page 10 
undergoing a continuing course of treatment for his back injury at Carolina Orthopaedic Specialists and continued to treat at that practice through February 1, 2010.
22. Following Plaintiff's last appointment with Dr. Hannibal, Plaintiff continued to treat with Dr. Groves. On February 11, 2010, Plaintiff presented to Dr. Groves with complaint of "a throbbing type pain in the back of the neck." The medical record reflects that Plaintiff did not recall an injury to his neck, and wonders if the pain "is just arthritis causing the pain." This is the first complaint of neck pain and is approximately seven (7) months after the compensable low back injury. A follow-up appointment with Dr. Groves on February 18, 2010, makes no mention of Plaintiff's neck.
23. The Full Commission finds that Plaintiff is entitled to a second opinion from a physician other than Dr. Poehling for a determination as to whether he needs a back surgery. The Full Commission further finds that this case should be referred to the Medical Rehabilitation Nurses Section for the assignment of a Nurse Consultant to assist the parties and facilitate Plaintiff's second opinion.
24. The Full Commission finds that the greater weight of the evidence does not establish that Plaintiff sustained a compensable injury to his right knee on July 10, 2009. Plaintiff did not seek treatment for his right knee until September 4, 2009, when he presented to Dr. Stephen Groves almost two (2) months after his lower back injury. The medical records indicate that Plaintiff has pre-existing bilateral knee problems and "right knee pain following an injury 7 years ago."
25. The greater weight of the evidence does not establish that Plaintiff sustained a compensable injury to his neck on July 10, 2009. Plaintiff did not mention any report of neck pain to any of his medical providers until he presented to Dr. Groves on February 11, 2010. The *Page 11 
medical record reflects that Plaintiff does not remember injuring his neck and is not sure if he did anything in particular to cause his neck pain or if arthritis is the cause of his neck condition.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his low back as a result of a specific traumatic incident arising out of and in the course of her employment with Employer-Defendant on July 10, 2009. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to continuing temporary total disability compensation at the rate of $253.46 per week until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of the compensable low back injury as may be required to provide relief, effect a cure or lessen the period of disability, including the payment by Defendants for a second opinion for a determination as to whether Plaintiff needs back surgery. N.C. Gen. Stat. § 97-25. This matter is referred to the Medical Rehabilitation Nurses Section for the assignment of a Nurse Consultant to assist the parties and facilitate Plaintiff's second opinion. The parties shall communicate about and coordinate such issues with the Nurse Consultant. The Nurse Consultant shall assist the parties in arranging a second opinion for Plaintiff's back. N.C. Gen. Stat. § 97-27.
4. Plaintiff did not sustain a compensable injury to his right knee on July 10, 2009. Plaintiff has not proven that his right knee condition is causally related to his July 10, 2009 lower back injury, and that the right knee condition arose out of or in the course and scope of his *Page 12 
employment with Employer-Defendant. N.C. Gen. Stat. § 97-2(6);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d. 750 (2003).
5. Plaintiff did not sustain a compensable injury to his neck on July 10, 2009. Plaintiff has not proven that his neck condition is causally related to his July 10, 2009 lower back injury, and that the neck condition arose out of or in the course and scope of his employment with Employer-Defendant. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d. 750 (2003).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's request for a second medical opinion/Independent Medical Evaluation with a physician other than Dr. Gary Poehling is hereby GRANTED. The parties SHALL work with an assigned Nurse Consultant to provide Plaintiff a second opinion regarding a potential back surgery with an agreed upon duly qualified physician or surgeon.
2. Plaintiff's claim for a right knee injury is hereby DENIED.
3. Plaintiff's claim for a neck injury is hereby DENIED.
4. Defendants shall continue to pay temporary total disability benefits to Plaintiff as a result of his compensable July 10, 2009 lower back injury at a weekly rate of $253.46 until he returns to work, or until further Order of the commission.
5. Each side shall bear its own costs.
This the ___ day of June 2011. *Page 13 
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1